IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WILLIAM GREGORY COOK | * |
|     Plaintiff, | |
| v. | * CIVIL ACTION NO. ELH-13-635 |
| TYRONE CROWDER | * |
| C.O. II WOODEN | |
| UNKNOWN CORRECTIONAL OFFICERS | * |
|   AT MRDCC | |
| C.O. I PAIGE | * |
| LIBRARIAN R. NEWBURN | |
| OFFICER MICHAEL WILLIAMS | * |
|     Defendants. | |

*****

MEMORANDUM

William Gregory Cook, the self-represented plaintiff, was arrested in Baltimore on January 17, 2013, for possession of a controlled dangerous substance ("CDS"). ECF 51-3 at 4.[1] At the time of his arrest, Cook was on Mandatory Supervision Release with respect to an earlier State of Maryland offense. Because of Cook's CDS arrest, a parole retake warrant was issued on January 29, 2013, charging Cook, *inter alia,* with failure to obey all laws (Rule 4). ECF 51-3 at 5. Cook was arrested on that warrant on February 12, 2013, *id.* at 2, and was confined at the Maryland Reception Diagnostic & Classification Center ("MRDCC") on the violation of parole retake warrant.[2] He filed suit on February 28, 2013, claiming that he was denied access to an administrative remedy procedure ("ARP") grievance form to complain of water leaking into his cell. Cook further alleges that the

---

[1] The record reflects that the CDS was not marijuana.

[2] Cook affirms that he arrived at MRDCC on February 12, 2013. ECF 16 at 2.

MRDCC legal library was inadequate for parole violators to "fight their case," and thus he was denied his constitutional right of access to the courts. ECF 1. He requested injunctive relief and compensatory damages of $100,000.00.

On a number of occasions, Cook was subsequently permitted to amend and/or supplement his complaint, to add claims and parties regarding his lack of access to courts and to ARP forms, the refusal of MRDCC officers to sign the ARP forms, the inadequacy of the MRDCC law library, flaws with services provided by a program called Library Assistance to State Institutions ("LASI"), and the alleged tampering with his incoming and outgoing legal mail. *See* ECF 4, 13, 14, 16, 17, 22, 23, 25, 26, 27 & 36.

Based on these allegations, plaintiff has sued several defendants. They are Warden Tyrone Crowder; Ruth Mewborn; Shyne Paine; Michael Williams; and Crystal Wooden.[3] In addition, he has sued "Unknown Correctional Officers at MRDCC."

Specifically, plaintiff alleges that Warden Crowder violated plaintiff's constitutional right to access to the courts based on the lack of a law library at MRDCCC (ECF 1 at 3); Crystal Wooden violated his constitutional rights by refusing to provide him with ARP forms to complain about the conditions of confinement (*id*. at 2-3); Michael Williams and Shyne Paine violated his constitutional rights by refusing to provide him with, or sign, ARP forms on April 20, 2013, and June 12, 2013 (ECF 13, 27); and Ruth Mewborn "deliberately and arbitrarily" denied him access to legal material that he requested through LASI (ECF 16, 25). Further, plaintiff claims that on June 23, 2013, he

---

[3] The Clerk shall substitute the names of Shyne Paine and Ruth Mewborn for those of defendants C.O. I Paige and R. Newburn.

mailed legal documents to perfect his appeal in regard to another federal district court case, but the material had not arrived at the United States Court of Appeals for the Fourth Circuit by July 2013 (ECF 39).

Plaintiff sued Mewborn in her individual and official capacities. ECF 25 at 4. And, he has sued Crowder in his official capacity. ECF 23 at 1.

On August 3, 2013, Cook informed the court that he had been released from confinement.

Defendants, with the exception of "Unknown Correctional Officers at MRDCC," have filed a motion to dismiss or, in the alternative, motion for summary judgment. ECF 51. The Motion is supported by a memorandum and several exhibits. *See* ECF 51-1 to 51-4 (collectively, the "Motion"). Plaintiff has filed an opposition, with exhibits. ECF 53. No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, the Motion, construed as a motion for summary judgment, shall be granted and judgment shall be entered in favor of defendants.[4]

**Background**

Cook was sentenced by a Maryland court in 1982 for the crime of robbery with a deadly weapon, and was paroled in 2006. ECF 51-3 at 3, 4. He was on mandatory supervised release on January 16, 2013, when he was arrested on a CDS possession charge. *See* ECF 51-3 at 3-4. In connection with that charge, he was released on bail. ECF 51-3 at 7. Nevertheless, as a result of the CDS arrest, a parole retake warrant was issued on January 29, 2013, for failure to obey all laws (Rule 4). ECF 51-3 at 5. Cook was arrested on the retake warrant on February 12, 2013, ECF 51-3 at 2,

---

[4] In light of this decision, the complaint against defendants "Unknown Correctional Officers at MRDCC" shall be dismissed.

and was taken to MRDCC pending trial on the CDS charge and the parole revocation proceedings. *See* ECF 51-3, Declaration of David Blumberg,[5] and attachments.

Plaintiff apparently retained counsel, Robert Cole, Jr., in connection with the parole matter. Mr. Cole wrote two letters to the Maryland Parole Commissioner, one on May 7, 2013, and the other on June 21, 2013, asking the Commission to recall the parole retake warrant. *See* ECF 51-3 at 7-8.

MRDCC is a maximum security intake facility that normally houses inmates for a short confinement and that transfers inmates to other institutions after evaluation and classification. *See* ECF 51-2, Declaration of Charnel Hines, Administrative Remedy/Audit Coordinator at MRDCC, ¶ 4. Thus, it has limited programs and privileges. *Id.* ¶ 5. Moreover, because an inmate is usually at MRDCC for only a short time, legal services are generally not available. *Id.* ¶ 4. But, when an inmate is required to stay for a longer period of time, "every effort will be made to accommodate his need for legal services." *Id*. Charnel acknowledges that the facility is not set up for legal library services, but points out that inmates may request copies of published case law through the LASI program, which is administered through the librarian at the Metropolitan Transition Center ("MTC"), a nearby facility. *Id.* ¶ 5.

Ruth Mewborn, a librarian for 24 years with the Maryland Department of Labor, Licensing and Regulation, provides library services at the MTC, which is close to MRDCC. ECF 51-4, Declaration of Ruth Mewborn ¶¶ 2, 5. She explained that MRDCC does not have its own library, *id.* ¶ 4, but inmates housed at that facility may obtain library materials from MTC via LASI requests. *Id.* ¶ 5. Mewborn appended to her Declaration a LASI request completed by Cook on March 3,

---

[5] Blumberg is the Chair of the Maryland Parole Commission and has been a member of the Commission since 2003. ECF 51-3, ¶ 2.

2013, ECF 51-4 at 4, in which he sought provisions from the Maryland Code regarding drug possession and drug court, two other legal cases, and the Code of Maryland Regulations ("COMAR") concerning the loss of credits from a parolee whose parole is revoked. *Id.* According to Mewborn, plaintiff made a total of 15 LASI requests during his incarceration, and she processed all of them. ECF 51-4, ¶ 7. However, she did not fill the LASI request of March 3, 2013, because Cook "failed to provide proper citations for the materials requested." ECF 51-4, ¶ 7. On March 11, 2013, Mewborn informed Cook that the library was only permitted to send out LASI case law. ECF No. 51-4 at 4.

On February 26, 2013, plaintiff filed an Administrative Remedy Procedure, complaining about water leaking into his cell at MRDCC from the window. ECF 51-2, ¶ 7; ECF 51-2 at 4. However, plaintiff withdrew that ARP on March 6, 2013, and signed a form to that effect. Hines Decl. ¶ 7; *see also* ECF 51-2 at 5.

Cook also claims that incoming mail from this court, namely an April 2013 Order issued by Judge Peter J. Messitte in *Cook v. Crowder*, Civil Action No. PJM-13-945 (D. Md.), was not received intact as one of the three pages was missing. A review of the docket shows that the Order, issued on April 16, 2013, was followed by a request by Cook on April 24, 2013, for a complete copy. This request was satisfied on April 24, 2013, well within the thirty-day appellate time period. No appeal, however, was filed by Cook.

According to defendants, Cook had a parole revocation hearing on May 10, 2013. ECF 51-1 at 4.[6] On June 17, 2013, the CDS charge against Cook was nolle prossed. *Id. See also State v.*

---

[6] Defendants assert that plaintiff's parole revocation was conducted in the Circuit Court for Baltimore City on May 10, 2013. ECF 51-1 at 4. Cook disputes this assertion. To my knowledge, Maryland's circuit courts do not conduct parole revocation hearings. Moreover, if Cook had a parole

*Cook*, Case No. 813121036 (Circuit Court for Baltimore City) www.casesearch.courts.state.md.us/inquiry. Cook was conditionally released from MRDCC and continued on mandatory supervision, effective August 5, 2013. ECF 51-3.

## Standard of Review

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint. *See Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." But, the Supreme Court has said: "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 n. 3, (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal citations omitted); *see Painter's Mill Grille, LLC v. Brown,* 716 F.3d 342, 350 (4th Cir. 2013). In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *see Iqbal*, 556 U.S. at 684; *Simmons v. United Mortg. and Loan Inv., LLC,* 634 F.3d 754, 768 (4th Cir. 2011).

The court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the non-moving party. *See Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied,* ____ U.S. ____, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-

---

revocation hearing on May 10, 2013, then his attorney, Mr. Cole, would not have had a reason to write to the Commission on June 21, 2013. *See* ECF 51-3 at 8. However, this discrepancy is not material to the issues.

86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010). In evaluating the complaint, however, the court need not accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), nor must it agree with legal conclusions couched as factual allegations, *Iqbal,* 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not' show[n]–'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

As noted, defendants have moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, for summary judgment, pursuant to Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).


A court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate if "the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448 (4th

8

Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 961 (4th Cir. 1996)).

Generally, in order to raise the issue that discovery is needed, the party opposing the motion must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted).

Nevertheless, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional

equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted). *See Harrods Ltd.,* 302 F.3d at 244 ("[I]n some cases courts have held that summary judgment was premature even when the opposing party failed to file a [Rule 56(d) ] affidavit.").

Here, the parties have not engaged in discovery. Plaintiff has not, however, filed a Rule 56(d) affidavit. But, he has filed a response in opposition to the Motion. And, both sides have submitted exhibits in support of their positions. I am satisfied that it is appropriate to address the defendants' motion as one for summary judgment, because consideration of the extraneous material will facilitate disposition of this case. Therefore, I will construe the motion as one for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied,* 541 U.S. 1042 (2004). The court should view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the

witness' credibility. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the " 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

**Discussion**

Defendants advance several arguments in support of their motion for summary judgment. They contend that the Eleventh Amendment bars any claim raised against defendants Crowder and Mewborn in their official capacities; that Cook has failed make out a claim for denial of access to courts with regard to his access to the ARP grievance forms, law library materials and the alleged tampering with his incoming and outgoing mail; that no claim of personal involvement has been made against Warden Crowder; and that defendants are entitled to qualified immunity.

In his opposition, Cook maintains that there are genuine disputes of material facts and summary judgment should not be granted in defendants' favor. ECF No. 53. He claims that he was "arbitrarily" denied access to legal materials that were provided to another inmate. Cook also maintains that he did not appear in circuit court on the date set out by defendants. Cook seemingly alleges that his collateral attack on his sentence was frustrated because he was denied legal materials. ECF 53. With the facts and standards in mind, the court shall address Cook's claims.

With respect to the claims against Crowder and Mewborn in their official capacities, defendants argue that they are barred by the Eleventh Amendment to the United States Constitution.

11

It provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State."

The Eleventh Amendment, which preserves the sovereign immunity of the states, precludes a private individual from suing an unconsenting state or an "arm of the state" or an instrumentality of state in federal court, absent waiver or a valid Congressional abrogation of sovereign immunity. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). *See also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Bland v. Roberts,* 730 F.3d 368, 389 (4th Cir. 2013). The preeminent purpose of state sovereign immunity is to accord states the dignity that is consistent with their status as sovereign entities. *Fed. Mar. Comm'n v. S. Carolina State Ports Auth.*, 535 U.S. 743, 760 (2002).

However, the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), creates an exception to sovereign immunity that is applicable in suits against individual state officers seeking declaratory and injunctive relief to prevent ongoing violations of federal law. *See generally Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997); *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a

12

court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon*, 535 U.S. at 645 (internal quotation marks omitted).

Claims against Crowder and Mewborn in their official capacities are claims against the State, as the State is the real party in interest. Maryland has not waived its sovereign immunity before this court, nor has immunity been abrogated by Congress. But, to the extent that Cook seeks prospective injunctive relief, such claims would not be subject to dismissal or summary judgment based on sovereign immunity as to ongoing violations of federal law. As discussed below, however, this case does not involve actionable or ongoing violations of federal law.

I turn next to Cook's claim regarding access to the courts. Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However, that right is not without limits. The Supreme Court said in *Lewis v. Casey*, 518 U. S. 343, 355 (1996):

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). Actual injury occurs when a prisoner demonstrates that a "non-frivolous" and "arguable" claim was lost because of the denial of access to the courts.

*Lewis,* 518 U.S. at 352-352. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Id.* at 349.

In *Christopher v. Harbury*, 536 U.S. 403, 415 (2002), the Supreme Court characterized access-to-the courts claims as being in one of two categories. *Id* at 413. The first, termed "forward looking claims," are cases where official action frustrates a plaintiff's ability to bring a suit at the present time. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004). The second class, termed "backward looking claims," arise when a plaintiff alleges that a specific claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case." *Id.* at 1209. In this way, the official action is said to have "'rendered hollow [the plaintiff's] right to seek redress' " in the courts. *Id.* (quoting *Christopher*, 536 U.S. at 415 (brackets in original) (internal citations omitted)).

Whether the claim is forward looking or backward looking, a prisoner claiming he was denied access to the courts must ultimately prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a non-frivolous legal claim. Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415.

Cook's access-to-courts claims are relatively uncomplicated and straightforward: he complains that defendants Wooden, Williams, and Paine repeatedly denied him access to sufficient

ARP forms and/or refused to sign off on the forms as required. Additionally, he sued Mewburn, claiming that there were no legal resources available at MRDCC and that the he was denied access to legal materials through the LASI program pertaining to his criminal case and revocation hearing. Finally, Cook claims that in April of 2013 he received an incomplete order from another judge of this court, and his outgoing legal mail sent to the Fourth Circuit in June 2013 was not received.

After review of the materials submitted in this case, the court finds that Cook has failed to demonstrate a viable claim of denial of access to court. Whether or not Cook was refused access to each and every ARP form he requested or officers refused to sign off on a particular ARP form, the Constitution creates no entitlement to grievance procedures or access to such procedures voluntarily established by a state.[7] *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Further, Cook has failed to demonstrate any actual injury in his ability to proceed with his cases. He does not refute Mewburn's claim that, while at MRDCC, he submitted 15 separate LASI requests, only one of which was not processed due to Cook's failure to provide proper citations to the requested materials. Most important, he neither denies nor disputes that he was represented by counsel in regard to his parole retake warrant and the CDS charge, which was subsequently nolle prossed. And, as a result of the dismissal of the CDS charge, Cook received a favorable parole determination: he was continued on mandatory supervision in August of 2013.

Finally, to the extent that Cook claims that his outgoing mail to the Fourth Circuit was not processed, the Public Access to Court Electronic Records ("PACER") for the Fourth Circuit shows

---

[7] It is arguable that if certain acts or omissions relating to the processing of inmate grievances interfere with an inmate's constitutional right to access the courts, a colorable claim may be stated. *See Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir. 1995). Cook has failed to demonstrate that the refusal to provide him with or to sign off on ARP forms impeded his access to the courts.

that his motion for extension of time to file a brief and the brief itself were properly received by the appellate court. Therefore, this claim lacks merit.

## Conclusion

Cook has failed to demonstrate real injury in his ability to proceed in regard to his state and federal cases. For reasons articulated herein, the court shall grant the summary judgment motion filed by defendants. The case shall be closed for all purposes.


Date:  May 30, 2014                                                          /s/
                                                                       Ellen Lipton Hollander
                                                                       United States District Judge